In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2984

JAMES DOMKA,

*Plaintiff-Appellant,*

*v.*

PORTAGE COUNTY, WISCONSIN,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07-C-0063-S—**John C. Shabaz,** *Judge.*

_____

ARGUED FEBRUARY 14, 2008—DECIDED APRIL 24, 2008

_____


Before MANION, ROVNER and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*. As a result of James Domka's plea bargain following his third-offense arrest for driving under the influence, his sentence included work-release privileges (known in Wisconsin as "Huber privileges") and the opportunity to serve the majority of his jail time at home under Portage County's Home Detention Program ("HDP"). While under the HDP, Domka registered a positive alcohol reading on a Sobrietor, an alcohol breath-test machine connected to the Sheriff's Department through Domka's phone line. Domka's Huber privileges

and participation in the HDP were then revoked and he was required to serve his remaining time in jail. Domka filed suit against Portage County under 42 U.S.C. § 1983, alleging that he had constitutionally protected liberty interests in his Huber privileges and the HDP and that, in violation of the Fourteenth Amendment, he was deprived of these without the requisite procedural due process. The district court found that Domka had waived any constitutionally required due process rights he may have had, and granted Portage County's motion for summary judgment. We agree with the district court and affirm its decision.

## I.

On December 10, 2004, James Domka drove his car into a ditch. Found to have an alcohol content of .179, Domka was charged with his third offense Operating Under the Influence of Intoxicants and on April 22, 2005 was sentenced to 105 days in jail with Huber work-release privileges, the first 30 to be served in jail and the balance on electronic monitoring. Pursuant to his plea agreement and the sentence, Domka was to have Huber privileges[1] both while serving in the jail and while finishing his sentence outside the jail on an electronic monitor under Wisconsin's Home Detention Program ("HDP"). Wisconsin Statute § 302.425, which creates the HDP, provides in relevant part:

> Subject to the limitation under sub. (3), a county sheriff or a superintendent of a house of correction may

---

[1] Section 303.08 of the Wisconsin Statutes, also known as the "Huber Law," governs work release privileges for Wisconsin county jail inmates.

place in the home detention program any person confined in jail who has been arrested for, charged with, convicted of or sentenced for a crime. The sheriff or superintendent may transfer any prisoner in the home detention program to the jail.

Wis. Stat. § 302.425(2).

The statute further provides:

If a prisoner described under sub. (2) and the department agree, the sheriff or superintendent may place the prisoner in the home detention program and provide that the prisoner be detained at the prisoner's place of residence or other place designated by the sheriff or superintendent and be monitored by an active electronic monitoring system. The sheriff or superintendent shall establish reasonable terms of detention and ensure that the prisoner is provided a written statement of those terms, including a description of the detention monitoring procedures and requirements and of any applicable liability issues. . . .

Wis. Stat. § 302.435(3).

The Portage County Sheriff's Department, pursuant to the Wisconsin statute, codified the terms of its HDP in a three page, 24 paragraph document entitled "Portage County Sheriff's Department Home Detention Program" (the "PCSDHDP") and established the use of a Sobrietor as part of the program.

Domka served his time in the Portage County jail from June 7 through June 27, 2005. On June 27, Domka and Penny Borski, the Portage County officer who was in charge of administering the HDP, met and together

reviewed each of the 24 items contained in the PCSDHDP. After indicating to Officer Borski that he understood a provision and agreed to comply with it, Domka initialed each paragraph individually. The following paragraphs of the PCSDHDP are of particular relevance:

> I understand the consumption of alcoholic beverages or unlawful drugs or narcotics is prohibited and will result in immediate removal from the Home Detention Program, loss of Huber Privileges and returned (sic) to the Portage County Jail. (Paragraph 8.)

> I understand a violation of any of these conditions of agreement will cause my removal from the program without notice or avenue of appeal . . . . (Paragraph 12.)

> We will not tolerate any excuses, such as, but not limited to: failing the voice test, missing a call, failing to get off the phone when the machine is trying to call you etc. All the above are grounds for removal off the Program. In addition, it is your responsibility to inform your household of the conditions that need to be followed. (Paragraph 16.)

As a required part of the HDP, at random times throughout each day Domka would have to speak and blow into the Sobrietor. At the meeting on June 27, Office Borski also reviewed with Domka the "BI Sobrietor Client Information" form which provided, *inter alia*:

> Any alcohol reading on the sobrietor will result in immediate removal from HDP and you will lose your HDP & Huber Privileges. Be aware that ingesting any food or drink with alcohol can result in a positive breath alcohol test. Example, mouthwash and toothpaste; chewing tobacco; cough medicine; vanilla extract; & some sauces and candies.

In Officer Borski's presence, Domka signed this form as well, below the statement which read "I understand any violation(s) of these rules can result in termination from the HDP Program."

Between June 27 and July 10, 2005, the Sobrietor recorded several failed tests as the result of user error, none of which registered a positive alcohol reading. On Sunday, July 10, 2005 at 9:55 am, Domka's Sobrietor test resulted in a positive alcohol reading of .021. As with all individuals on a Sobrietor program who test positive for alcohol, Domka was automatically retested by the Sobrietor five minutes later. Domka's 10:00 am Sobrietor test again registered a positive alcohol reading of .021.

When Office Borski returned to work early Monday morning, July 11, and saw Domka's Sobrietor had recorded two positive alcohol tests the previous day, she called Domka and requested that he report to jail within the hour. As a result of his violation of the PCSDHDP, Domka's participation in the HDP was then revoked and his participation in the Huber program was suspended. Domka served the balance of his sentence, 41 days, in the Portage County jail without Huber privileges.

Domka was released on August 21, 2005 and subsequently brought a 42 U.S.C. § 1983 case against Portage County, alleging that the County unconstitutionally deprived him of liberty interests without due process. Judge Shabaz granted the County's motion for summary judgment, holding that even if Domka did have liberty interests in remaining in the HDP and Huber privileges which would trigger constitutionally required due process, he had waived those rights in the HDP agreements.

**II.**

Reviewing the lower court's decision *de novo* and viewing the facts and all reasonable inferences in the light most favorable to the party opposing judgment, *e.g.*, *CSX Transp., Inc. v. Appalachian Railcar Servs., Inc.*, 509 F.3d 384, 386 (7th Cir. 2007), we agree that Domka's case presents no genuine issue of material fact and therefore the summary judgment granted to Portage County should be affirmed, *see* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**A.**

Domka's first hurdle is identifying a protected interest. "An essential component of a procedural due process claim is a protected property or liberty interest." *Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 1997) (citing *Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 756 (2005), *Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972)). "Liberty interests can arise from two sources: the Federal Constitution or state law." *Thielman v. Leean*, 282 F.3d 478, 480 (7th Cir. 2002) (citing *Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir. 1982). Conceding that no Wisconsin statute serves as the source of his alleged liberty interests, Domka puts forth two other theories to make his case: that the plea agreement between himself and the prosecutor granted him protected liberty interests in home detention and Huber privileges; and that the due process clause itself provides the basis for his liberty interest in those programs.

We easily reject the former argument. Domka had a choice in his plea agreement; he elected to serve a total of 105 days with most of that time in the HDP with Huber privileges rather than a shorter sentence of 75 days all to

be served in jail, also with Huber privileges. The plea agreement, Domka claims, therefore gave him a "legitimate entitlement" in those programs which entitlement gives rise to due process requirements which were not met here. We are unable to follow Domka's "logic" that his negotiations with the prosecutor *ipso facto* created a constitutional liberty interest in the programs into which he was subsequently placed and the three Supreme Court cases Domka cites do nothing to bolster his case as none of them supports his theory. *Santobello v. New York*, 404 U.S. 257 (1972), actually cuts the other way, as Domka *did* receive the sentence he had negotiated; *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989), dealt with the language requirements that must be contained within a state regulation in order for a state to create a protected liberty interest; and *Perry v. Sindermann*, 408 U.S. 593 (1972), also not on point, involved the due process protection of a personal property interest in employment. Without legitimate support, Domka's argument is a nonstarter. Common sense dictates that the district court's sound analysis of this issue, that the plea agreement between Domka and the prosecutor had no bearing on the post-conviction agreement between Domka and Portage, should stand. Domka received exactly what he bargained for—the opportunity to serve a portion of his time under the HDP with Huber privileges. What later came to pass between Portage County and Domka involving violations of the HDP agreement has nothing to do with the plea agreement. Domka must propose another source for his alleged liberty interests.

   And he does. His argument that the due process clause itself provides the basis for his liberty interests is more compelling, albeit far from irrefutable. After all, as the

Supreme Court has recognized, "[although] prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (citations and internal quotation marks omitted).[2] And as the Court more recently emphasized, "[a] broad range of choices that might infringe constitutional rights in a free society fall within the expected conditions of confinement of those who have suffered a lawful conviction." *McKune v. Lile*, 536 U.S. 24, 37 (2002).

Our analysis, then, must begin with the "initial question [of] whether being removed from a home-detention program into jail is a sufficiently large incremental reduction in freedom to be classified as a deprivation of liberty under the *Sandin* doctrine, since, if not, [Domka] has no right to due process of law." *Paige v. Hudson*, 341 F.3d 642, 643 (7th Cir. 2003) (citations omitted). The law in a case such as this, where the convict is not technically "imprisoned," is still evolving. What *is* established is that an inmate on parole has a liberty interest in retaining that status, *Morrissey v. Brewer*, 408 U.S. 471 (1972), and that this right has been extended to pre-parolees, *Young v. Harper*, 520 U.S. 143 (1997). Our recent opinion in *Paige v. Hudson* broadened this principle slightly further, finding that removing a *probationer* from home detention

---

[2] The *Sandin* decision so significantly limited inmates' protected liberty interests that we have observed that in its wake, the only protected liberty interest remaining for inmates may be the loss of good time credits. *See Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997).

status fell somewhere on the deprivation spectrum as greater than that at stake in *Sandin* and less than that at issue in *Young*, but qualified nonetheless as a "sufficient reduction" in freedom to be deemed a "deprivation of liberty" requiring due process. *Paige*, 341 F.3d at 643.

But we are not prepared to say that *Paige* is necessarily controlling here; the fact that Domka was not a probationer but instead a prisoner serving his time outside the jail renders *Paige* distinguishable. The County makes a valid point that revoking probation and returning someone who already served his sentence to incarceration, as was the situation in *Paige*, is arguably a greater loss of freedom than having Domka serve out his remaining time of confinement in a "different location."[3] Because we agree with the district court's ultimate determination that Domka waived any due process protections that *may* have been required, *see infra*, we save for another day the narrow question of whether a prisoner—as opposed to a probationer, parolee or pre-parolee—has a liberty interest in a home detention program.[4]

---

[3] Although there is no question that the HDP afforded Domka more freedom than he would have had in prison, we agree that between the constant electronic monitoring, the fact that he was not allowed to leave his home except to go to work or for other pre-approved reasons, the frequent Sobrietor tests, etc., Domka can appropriately be characterized as a prisoner "serving a portion of [his] confinement in a different location [from prison]." Portage County Br. at 42.

[4] With regard to Domka's Huber privileges, the language of the statute itself makes clear that they are in fact *privileges* which may be withdrawn by the court "at any time by order entered with or without notice." Wisc. Stat. § 303.08(2).

**B.**

The County compellingly argues that Domka waived any due process rights he may have had and Domka provides no convincing support for a contrary finding. It is without question that an individual may waive his or her procedural due process rights. *See, e.g., D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972). A constitutional waiver is considered to be valid if it is knowing and voluntary. *E.g., Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (a waiver ordinarily is "an intentional relinquishment or abandonment of a known right or privilege"). *See also United States v. Hill*, 252 F.3d 919, 923 (7th Cir. 2001) (knowing and intelligent waiver "is demonstrable knowledge of the right being surrendered and a formal decision to forego that right").[5]

The language in the agreement that Domka signed which states that he could—and would—be removed from the HDP and the Huber program if the Sobrietor registered a positive alcohol reading is completely unambiguous. Domka agrees that he understood that if he violated any condition of the HDP, including the Sobrietor portion of the program, he would be removed from the program without notice.[6] Domka alleges, however, that

---

[5] Domka attempts to equate his situation to one in which a state actor conditions the receipt of a state benefit "such as a liquor license or an entertainment permit" on a waiver of constitutional rights. *See* Domka Br. at 39. This analogy falls short. Domka is a *convicted prisoner*, not a businessman attempting to obtain state licensing.

[6] Domka has reiterated this understanding several times during the course of this case. *See, e.g.,* Domka's deposition (R. 21);

(continued...)

Officer Borski made certain statements during their June 27th meeting which constituted oral modifications to the agreement. He claims that because he relied on these statements, and because they muddied an already ambiguous contract, it was impossible for him to be deemed as having made a "knowing and intelligent" waiver of his due process rights. Domka's argument hinges on his claim that Officer Borski told him that if at any time the Sobrietor tested positive for alcohol, someone from the jail would come within two hours to administer another test. If the second test was negative for alcohol, Domka would then have a blood test for an ultimate determination of alcohol consumption. The County disputes that Officer Borski ever said this.[7]

Because this is a motion for summary judgment, the facts must be considered in the light most favorable to Domka, the non-moving party, and ambiguities must be resolved in his favor. *See, e.g.*, *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). In support of his opposition to the County's motion, it is entirely appropriate for Domka to rely here on his own testimony to the extent it is admissible under the Federal Rules of Evidence. *See id.* at 771-73.

---

(...continued)
Plaintiff's Response to Defendant's Proposed Findings of Fact and Conclusions of Law (R.33 at 12, para. 37).

[7]  There are other statement that the parties agree Officer Borski made to Domka at that meeting, including telling him that he should rinse his mouth with water before each Sobrietor test; and that he could go into the yard to feed his animals from 12-1 pm notwithstanding that the PCSDHDP agreement specified that he must remain inside the house (not in the yard or on the porch) when he was not at work.

Therefore, for purposes of this appeal we must accept Domka's version of the conversation he had with Officer Borski on June 27 regarding retesting.

But even accepting Domka's version of the conversation, we remain disinclined to accept his argument. The clear statement of the signed, written agreement that "[a]ny alcohol reading on the Sobrietor will result in an immediate removal from HDP and you will lose your HDP and Huber Privileges" does not predicate removal from HDP and of Huber on Domka actually consuming alcohol, but only on a positive Sobrietor reading.[8] Officer Borski's comment about retesting renders the agreement no less unambiguous, and the County's case is significantly buttressed by the fact that Domka has admitted over and over that he understood that if he violated any condition of the HDP, including the Sobrietor portion of the program, he would be removed from the program without notice. *See* n.6, *supra*.

## C.

Domka would have this Court find his waiver invalid because, he claims, the PCSDHSP constitutes an unenforceable "contract of adhesion," a "take it or leave it" agreement presented by the County, the party with the power, without the opportunity for Domka to have negotiated its terms. Domka's failure to have made this argu-

---

[8] For this reason, Domka's arguments that that he did not actually have any alcohol while on in the HDP, that the Sobrietor's positive result was in fact a "false positive" and that the Sobrietor was unreliable (assuming Domka is even qualified to address this issue) are immaterial here.

ment in the court below, however, prevents us from now considering it. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983) (citations omitted). *See also Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008) ("it is axiomatic that an issue not first presented to the district court may not be raised before the appellate court as a ground for reversal" (citations and internal quotations omitted)). Domka attempts to skirt this waiver rule by claiming that although he may not have used the specific terminology below, the essence of the argument he put forth in the district court is consistent with this contract of adhesion theory. He refers us to the "long section [in his brief below] arguing that the alleged waiver was not knowing, intelligent and voluntary …" (Domka Reply Br. at 11) in purported support. There are several flaws with this argument. First and telling, Domka's district court brief does not vigorously argue that the waiver was involuntary but focuses instead on it not being knowing and intelligent. R.31.[9] Moreover, although our examination of Domka's brief below does reveal two instances in which Domka used language about disparate bargaining power (one of which also makes reference to a "standard

---

[9] This is the so notwithstanding Domka's current assertion that "[t]he message of *Overmyer*, *Fuentes* and their progeny is that a non-negotiable adhesion contract … can never be seen as knowing, intelligent and, *most important*, voluntary." Domka Br. at 46 (emphasis added).

form"),[10] his argument in the district court was all about Borski's alleged "verbal addenda" creating ambiguities *concerning the rights he waived* such that his waiver could not be deemed knowing and intelligent. Even the most liberal reading cannot find buried within this argument the one Domka is now espousing—namely, that the *entire agreement* (including the waiver) is unenforceable as a contract of adhesion. [11]

Here, where no "jurisdictional questions are presented" and we are not presented with an "exceptional case[] [in which] justice demands more flexibility," *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1333 (7th Cir. 1977), we find no justification to depart from the long-standing rule

---

[10] Domka argued below (1) that black letter law requires ambiguities to be construed against the drafter "particularly where there is substantial disparity of power between the parties, and the contract is on a standard form supplied by the drafter", citing a Wisconsin state case (R.31 at 21); and (2) that "[u]nder the circumstances, where Domka was an inmate and Borski was an officer with authority over him, it was reasonable for Domka to rely upon Borski's verbal explanation and assertions" (R.31 at 24, n.5).

[11] Even if we agreed that Domka did put forth below the general theory that his inability to negotiate the contract rendered it unfair, we could not now properly consider his contract of adhesion argument. *See Libertyville Datsun Sales, Inc. v. Nissan Motor Corp.*, 776 F.2d 735, 737 (7th Cir. 1985) (where a party raises a specific argument for the first time on appeal, it is waived even though the "general issue" was before the district court) (collecting cases).

against considering new arguments on appeal.[12] "For '[t]o reverse the district court on grounds not presented to it would undermine the essential function of the district court.'" *Economy Folding Box*, 515 F.3d at 720 (*quoting Boyers v. Texaco Ref. & Mktg., Inc.*, 848 F.2d 809, 812 (7th Cir. 1988)). Accordingly, we do not consider Domka's contract of adhesion argument.

### D.

Lastly, we address Domka's claim that the County violated his due process by failing to seek a court order for the suspension of his Huber privileges after he was re-imprisoned. The Huber statute states that "[a]ny person sentenced to a county jail for a crime . . . may be granted the privilege of leaving the jail during necessary and reasonable hours" for various work and medical related purposes. Wis. Stat. § 303.08(1). Pursuant to the same statute, "[t]he sheriff may refuse to permit the prisoner to exercise the prisoner's privilege to leave the jail as provided in sub. (1) for not to exceed 5 days for any breach of discipline or other violation of jail regulations." Wis. Stat. § 303.08(10).

Domka has established that although it was Portage County's practice to seek a court order revoking an individual's Huber privileges for 60 days when it terminated his or her HDP participation, no such request was made

---

[12] Domka also argues that the district court's decision to dismiss the action based on a waiver makes it "understandable" that the parties would put the waiver issue on "center stage now." That may well be the case, but it does not mean that this Court can, or should, consider an argument he did not raise below.

in his case. The County's response is that as Domka had only 40 days remaining to serve, the 60 day court revocation was unnecessary. We need not assess the merits of this particular dispute. Portage County's departure in this case from its usual course of action may well provide Domka with an argument that the County failed to comply with the statute. However, this is not the proper venue in which, nor is a constitutional claim the proper vehicle by which, to make that claim. "Federal judges do not enforce state-created procedures in the name of the Constitution," *Gordon v. Degelmann*, 29 F.3d 295, 301 (7th Cir. 1994) (citation omitted), and a failure to comply with state procedural rules does not violate the federal constitution, *see Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002) and cases cited therein.

### III.

For the foregoing reasons, the district court's judgment is AFFIRMED.