HAMILTON, Circuit Judge,
dissenting in part.
I agree with my colleagues that plaintiffs failed to prove violations of their constitutional rights outside Soldier Field and Wrigley Field, and on Navy Pier. I respectfully disagree with the portion of the decision that remands to the district court plaintiffs’ claim that their rights were violated in Gateway Park, immediately west of Navy Pier, on July 16, 2006.
The point of my disagreement may be identified by asking what error the district court made, based on the record before it. The majority opinion does not answer that question. Instead, it expresses an impression that the application of the MPEA’s permit requirements to small groups at Gateway Park “might be overreaching,” but instructs the district court first to develop a record so that “the MPEA can be given an opportunity to defend its Policy.” Ante at 635. The reason no such record exists yet is that the plaintiffs did not make this argument to the district court in a timely way, when the city defendants moved for summary judgment. This claim, whatever its merits, was therefore waived. See, e.g., Fednav Int'l Ltd. v. Continental Ins. Co., 624 F.3d 834, 841 (7th Cir.2010); Domka v. Portage County, 523 F.3d 776, 783 (7th Cir.2008); Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).[1]
*637 In the abstract, there might well be problems with applying the MPEA’s permit requirement for demonstrations in Gateway Park. Navy Pier is not a public forum, but Gateway Park is. The constitutional rules are different. See Chicago Acorn v. Metropolitan Pier & Exposition Auth., 150 F.3d 695, 700-04 (7th Cir.1998) (discussing these sites and noting MPEA’s concession that Gateway Park is a traditional public forum). In a traditional public forum, a permit requirement applied to demonstrations by very small groups may run afoul of the Constitution. See Boardley v. U.S. Dep’t of Interior, 615 F.3d 508, 524 (D.C.Cir.2010) (striking down regulations requiring permits to engage in expressive activities in national parks as “overbroad and not narrowly tailored” because they imposed “substantial burdens on individuals and small groups' — burdens which the government has failed to justify”); Knowles v. City of Waco, 462 F.3d 430, 436 (5th Cir.2006) (“Other circuits have held, and we concur, that ordinances requiring a permit for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest.”); Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1039 (9th Cir.2006) (“Without a provision limiting the permitting requirements to larger groups, or some other provision tailoring the regulation to events that realistically present senous traffic, safety, and competing use concerns ..., a permitting ordinance is insufficiently narrowly tailored to withstand time, place, and manner scrutiny.”); American-Arab Anti-Discrimination Comm. v. City of Dearborn, 418 F.3d 600, 608 (6th Cir.2005) (“Permit schemes and advance notice requirements that potentially apply to small groups are nearly always overly broad and lack narrow tailoring.”); Cox v. City of Charleston, 416 F.3d 281, 283, 285-86 (4th Cir.2005) (invalidating ordinance barring “any person” from participating in “any parade, meeting, exhibition, assembly or procession ... on the streets or sidewalks of the city” without a permit because the city failed to “establish!] why burdening such expression is necessary to facilitate its interest in keeping its streets and sidewalks safe, orderly, and accessible”).
I also agree with my colleagues that we should avoid picking a number for the size of groups that cannot be required to obtain a permit. The configuration of Gateway Park as a “narrow bottleneck,” see Chicago Acorn, 150 F.3d at 703, may enable even a very small group to block or reduce the flow of pedestrians to and from Navy Pier. That configuration may distinguish this location from those in Santa Monica Food Not Bombs, 450 F.3d at 1042, and similar cases rejecting permit requirements for small groups.
The problem, as I see it, is that the constitutional question is before us not in the abstract but on a specific record of the evidence and arguments that plaintiffs chose to present in the district court. When the permit policy question arose in the district court, plaintiffs failed to make the arguments they make on appeal. In both their own motion for partial summary judgment and their memorandum opposing the city defendants’ motion for summary judgment, plaintiffs chose not to challenge the constitutionality of the MPEA permit policy on the grounds they raise here. On the contrary, in opposing summary judgment for the city defendants and in an apparent attempt to bolster their contention that their arrests at Gateway Park were illegal, plaintiffs asserted: “As a matter of practice, the MPEA does not require a permit for persons wishing to *638 engage in free speech activity in Gateway Park.” Dkt. No. 152 at 21. Whatever the reasons for plaintiffs’ tactical choice, the city defendants’ motion for summary judgment put the constitutionality of the permit policy at issue. See Dkt. No. 140 at 7-10.
That defensive use of the policy was sufficient to require the plaintiffs to respond with any attack they wished to make upon the policy. E.g., Domka, 523 F.3d at 783 (appellant’s, failure to make argument in opposing summary judgment waived theory for appeal). As best the district court could tell, plaintiffs’ only attack on the policy was the broad and untenable theory that “any system that requires a permit for public demonstrations and expressions of speech is per se violative of the First Amendment.” Marcavage v. City of Chicago, 635 F.Supp.2d 829, 840 (N.D.Ill.2009) (describing plaintiffs’ position in Dkt. No. 152). At no point in the district court’s summary judgment proceedings did plaintiffs articulate a viable challenge to the permit policy. They certainly did not make the narrower and perhaps more meritorious arguments they make on appeal.
Only after they had lost on the city defendants’ motion for summary judgment did plaintiffs attack the MPEA’s permit policy. Judge Shadur understandably concluded that he had already decided the issue against them. In other words, a busy district court reasonably decided that plaintiffs were not entitled to what golfers would call a Mulligan. The court applied the doctrine of issue preclusion based on its earlier decisions in the case. Whether viewed in terms of issue preclusion, the law of the ease, or waiver, I see no error in the court’s handling of the issue. The district court’s earlier decision is not binding on this court, but the course of proceedings in the district court shows that plaintiffs waived their challenge to the permit policy by failing to respond on that point when the city defendants moved for summary judgment. Based on the arguments and evidence presented, the district court did not err in rejecting plaintiffs’ claims arising from the Gateway Park/ Navy Pier events.
Even in these two separately-briefed appeals, plaintiffs’ muddled approach continues. Plaintiffs have failed to challenge the constitutionality of the permit policy in No. 09-3335, their appeal from summary judgment for the city and its officers. That was the decision in which the district court actually considered the merits of the permit policy. One would think that plaintiffs’ opening brief in that appeal would have been the place both to raise the Santa Monica Food Not Bombs argument and to explain their apparent failure to do so before the district court. Instead, plaintiffs focused on whether someone with authority told them on the spot that they did not need a permit, a dispute that does not affect the constitutionality of the policy. Only in their second appeal have plaintiffs presented the permit policy issue in a comprehensible form, raising at long last an argument they should have made years earlier. I would hold the plaintiffs responsible for their own tactical decisions and affirm the district court’s judgments in all respects.
By ordering a partial remand, my colleagues have taken a different approach regarding the MPEA’s permit policy. There are attractive reasons for doing so. That approach gives the plaintiffs a second chance to get it right. Depending on what the evidence shows, that second chance might result in more robust protection of First Amendment rights for plaintiffs and others. The better approach, though, would be to adhere to a more orderly litigation process. Plaintiffs had their op *639 portunity to present their claim. They failed. In the absence of clear error (indeed, any error) by the district court, we should respect that process and its results. We should do so by making clear that the district court’s decision and our affirmance of it do not amount to a definitive constitutional blessing of the permit policy in Gateway Park, but are based instead on the confusing and contradictory path plaintiffs pursued in the district court. That approach would leave the door open for another party to bring a new and stronger challenge to the policy. It would also protect the district court and the defendants from the prejudice caused by plaintiffs’ shifting and inconsistent prosecution of their case. I would affirm the district court’s judgments in their entirety, and I respectfully dissent from the portion of the majority decision remanding the Gateway Park portion of the case.[2]

. At an early point in the litigation, plaintiffs advanced a related point — that distinguishing between groups of five or more and four or fewer is "arbitrary and irrational.” Dkt. No. 34, at 4-6. Because plaintiffs presented no more than a passing glimpse of their current theory to the district court, they failed to preserve it for appeal. A "skeletal” argument does not preserve a claim for appeal, “[e]spedally not when” the party "presents a passel of other arguments.” United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991). As Fednav, Domka, and Lac du Flambeau Band show, among many other cases, we should not en-' courage a litigation strategy of throwing every conceivable idea against a wall to see what might stick. We also should not encourage *637 parties to overhaul and transform unsuccessful cases when they present them on appeal.

. To the extent that this Mulligan might enable plaintiffs to succeed to some degree on the Gateway Park issues and to seek a reasonable attorney fee under 42 U.S.C. § 1988, the district court can and should take into account the unusual procedural course of the case in determining what a reasonable fee would be.