NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 11, 2014[*]
Decided April 11, 2014

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-2180

| | |
|---|---|
| RICHARD J. CACCIOLA, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 08-4072 |
| | |
| MATTHEW D. McFALL, et al., | Michael M. Mihm, |
| *Defendants-Appellees*. | *Judge*. |

## O R D E R

Richard Cacciola contends in this suit under 42 U.S.C. § 1983 that a state trooper used excessive force to arrest him and jail staff were deliberately indifferent to his injuries. Cacciola challenges evidentiary and other procedural rulings, but the challenges are all baseless, so we affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Before Cacciola drove to Las Vegas to buy marijuana, he smoked some of the drug and ingested heroin, alcohol, and the potent pain-killers Oxycontin and methadone. As Cacciola was passing through Illinois, Trooper Matthew McFall saw him change lanes without signaling, so McFall pulled him over and ordered him out of his car. Cacciola had a gun and drugs in the car, had once served ten years in prison, and knew that he had outstanding arrest warrants in Louisiana and Florida. So he ran. McFall gave chase and eventually caught him. The parties dispute the details of the ensuing struggle, but they agree that it ended after McFall hit Cacciola in the head with a baton. Cacciola went to a hospital where tests confirmed that he had a cut on his scalp. Doctors released him a day later to the Henry County Jail, where, he says, his pain was not adequately treated. Cacciola eventually pleaded guilty in federal court to conspiring to distribute marijuana, 21 U.S.C. §§ 846, 841(a)(1), and possessing a firearm as a felon, 18 U.S.C. § 922(g).

The district court granted summary judgment on Cacciola's claim of deliberate indifference and sent the excessive-force claim to trial. Before trial, it ruled on three evidentiary objections. First, it allowed evidence of Cacciola's ten-year imprisonment (ending in 2000, for cocaine trafficking), as it could explain why he fled and resisted arrest. Second, to show further motive to run, the court permitted evidence that a gun was found in the car. Cacciola maintained that, even though the gun was found after the arrest, a jury might improperly think that the gun gave McFall reason to use force before the arrest. To reduce the risk of that inference, the court offered to instruct the jury that "it's absolutely, positively, categorically inappropriate for you to consider [the gun] for any other purposes" besides motive to run. After Cacciola expressed doubt that the limiting instruction would help, the court permitted the gun evidence. Third, Cacciola moved to exclude proposed testimony from Special Agent James Wolf, an expert on use-of-force practices. Cacciola argued that Wolf's testimony would tell the jury what result to reach. The court allowed Wolf to testify about "proper police practices," but barred the defense from "addressing the application of those practices to the facts in this case."

At trial Cacciola and McFall presented their competing versions of the altercation. Cacciola admitted during direct examination that he had a gun in his car, that he had been in prison, and that he had fled because he did not want to return to prison. He then testified that as he ran McFall hit him in the back of the head repeatedly, cutting his scalp. (Cacciola is 6'1" and weighs 280 pounds.) Even after he fell, Cacciola said, McFall beat him some more, swearing at him and threatening to kill him.

Eventually McFall pepper-sprayed his face, and Cacciola lost consciousness. On cross-examination, Cacciola admitted that his prior prison sentence was for ten years.

For his part, McFall (who is also 6'1" but weighs only 180 pounds) testified that when he caught up with Cacciola, Cacciola refused orders to stop, roll over, and put his hands behind his back. Instead, he kicked McFall, and ran again. McFall called for back up and then continued the chase. During the chase, Cacciola lunged at McFall, and McFall warned Cacciola that he would use a taser (though he had none). Ignoring this warning, Cacciola continued to run until he fell. Cacciola did not comply with commands to lie on his stomach, instead grabbing at McFall's baton when he swung it. McFall wrestled Cacciola onto his stomach and struck at the nerves between Cacciola's shoulder blades. He inadvertently hit Cacciola at least once in the head. Eventually Cacciola tired, and McFall subdued him with pepper spray.

Special Agent Wolf testified about the training of police officers on the use force and explained the proper degrees of force calibrated to the suspect's behavior. Proper force depends on many factors, he continued, including the number of officers present, the relative sizes of the officer and suspect, and their positions. If a suspect is more than "verbally uncooperative" or passively resisting and is "physically combative," police officers are told that a baton strike may be proper. On cross examination Wolf opined that it would not be "appropriate" to strike a suspect on the back of the head with a baton if the suspect were non-combative, on his stomach, and on the ground.

At the close of trial, the parties jointly proposed this court's pattern jury instructions for excessive-force claims. Using that pattern language, the judge instructed: "You must decide whether Defendant's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that Defendant faced." The jury returned a verdict for McFall.

On appeal Cacciola first challenges the three evidentiary rulings. He begins with the decision to allow Special Agent Wolf to testify about use-of-force practices. Cacciola accepts Wolf's credentials and the helpfulness of his expert testimony. But he argues that Wolf went too far by intimating an opinion on the ultimate issue of reasonable force and bolstering McFall's credibility. He is incorrect. First, "[a]n opinion is not objectionable just because it embraces an ultimate issue" to be decided by the jury. FED. R. EVID. 704(a); *see also Florek v. Village of Mundelein, Ill.*, 649 F.3d 594, 602 (7th Cir. 2011). Second, in this case, Wolf merely explained the proper uses of force, which is permissible. *Kladis v. Brezek*, 823 F.2d 1014, 1019 (7th Cir. 1987); *see also, e.g., Champion v.*

*Outlook Nashville, Inc.*, 380 F.3d 893, 908–909 (6th Cir. 2004). He spoke about proper police practices, and the factors relevant to the hypothetical uses of force, without applying them to Cacciola's case. Moreover, the testimony could have bolstered Cacciola's case as much as McFall's: Wolf opined that an officer striking the back of a suspect's head who is lying on his stomach and non-combative (as Cacciola testified he was) would not be appropriate. The jury still had to decide whether to believe Cacciola or McFall. With these limits in place, the district court committed no error. *See Champion*, 380 F.3d at 908–909 (approving expert testimony about police use-of-force practice, rather than "about the proper actions of individual officers in one discrete situation").

Cacciola next contests the district court's decision to allow the evidence that he had a gun in his car. But because Cacciola admitted on direct examination that he had a gun, albeit to take the issue from the defense, he cannot object now. A party introducing evidence cannot complain on appeal about its admission, even if the evidence was introduced strategically to blunt the "sting" of the other side using it. *Ohler v. United States*, 529 U.S. 753, 755–60 (2000); *Clarett v. Roberts*, 657 F.3d 664, 670–71 (7th Cir. 2011); *see also Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1130 (9th Cir. 2010); *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 904 (8th Cir. 2006); 1 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 55, at 388 (7th ed. 2013). In any event, because McFall himself testified that he did not see the gun until *after* he subdued Cacciola, the jury would not likely have viewed it as justifying McFall's *pre-arrest* use of force.

In his final evidentiary challenge, Cacciola contends that under Federal Rule of Evidence 609(b) the district court should have barred the defense from questioning him about the length of his ten-year prison sentence. He argues that the underlying conviction (for cocaine trafficking) was more than ten years old and its probative value did not substantially outweigh the prejudice of such a serious-seeming sentence. But Rule 609 restricts evidence of prior convictions when used to impeach credibility. Here, evidence of the ten-year sentence was elicited for another purpose: to explain that Cacciola ran away to avoid returning to jail. *See* FED. R. EVID. 404(b) ("Evidence of other crimes . . . [may be admissible] as proof of motive . . . ."). Furthermore, using Rules 401 and 403, the court properly balanced the incarceration's probative value against the risk of unfair prejudice. In so doing, it did not abuse its discretion in allowing the evidence. *See Gora v. Costa*, 971 F.2d 1325, 1330–32 (7th Cir. 1992) (explaining that subject to Rules 401 and 403, district court has discretion to determine admissibility of prior incarceration for non-impeachment purposes).

Cacciola next challenges two aspects of the jury instructions. First, he contends that the district judge should have told the jury to limit its consideration of the gun and his prior incarceration to his motive to run. But Cacciola never asked for these instructions. Indeed, when the district court offered before trial a limiting instruction about the gun, Cacciola doubted its benefit. Second, he argues that the judge should have instructed the jury on the proper use of "deadly force." But he proposed the pattern reasonable-force instruction jointly with the defense. Having failed to preserve these challenges, he can succeed on appeal only if he shows plain error, FED. R. CIV. P. 51(d), meaning that he "would surely have prevailed at trial" with different instructions. *Griffin v. Foley*, 542 F.3d 209, 222 (7th Cir. 2008); *Mesman v. Crane Pro Servs.*, 512 F.3d 352, 357 (7th Cir. 2008). He has not even attempted to make this showing.

Cacciola directs his final challenges to the grant of summary judgment on his claim that jail officials were deliberately indifferent to his injuries after his arrest. The record, construed in Cacciola's favor, supports the following. After his struggle with McFall, Cacciola went to the hospital, where doctors performed x-rays, computed tomography (CT) analyses, and magnetic resonance imaging (MRI). They found no injuries beyond a bruised arm and the cut on Cacciola's scalp, which they stapled closed. The next day Cacciola was able to walk and was discharged to the Henry County Jail. The discharge report directed that Cacciola be returned to the hospital to remove the staples (if this could not be done at the jail). That report did not order any other follow-up tests or treatment, or note any medication to be provided. Other hospital records include a prescription for Vicodin, but they do not reflect whether the prescription was filled or passed on to the jail.

Because of his injury, jail staff checked on Cacciola every 15 minutes. When Dr. Stephen Cullinan examined Cacciola, he complained of pain, so Cullinan prescribed Motrin. One staff member, Officer Julie Hill, stated that Cacciola never asked that she help him get more medical treatment. Sheriff Gilbert Cady, who is in charge of the jail, asserted that he delegates the jail's day-to-day management to specialized jail administrators and never saw Cacciola or even knew he was at the jail. Cacciola stated that while at the jail he was in constant pain and should have received more medical attention.

In challenging the grant of summary judgment, Cacciola first argues that Dr. Cullinan should have given him the Vicodin that he was prescribed at the hospital and ordered more (unspecified) tests. Failing to follow instructions received from outside experts can amount to deliberate indifference. *See Gil v. Reed*, 381 F.3d 649,

663–64 (7th Cir. 2004); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999). But the only direction Dr. Cullinan received from the hospital was to send Cacciola back there to have the staples on his scalp removed. After Dr. Cullinan examined Cacciola, he exercised his professional medical judgment to prescribe Motrin. Cacciola's desire for a different pain medication and more tests merely reflects a difference of medical opinion, which is not a ground for a claim of deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). (Cacciola also raises concerns about an uncomfortable bed and untreated seizure disorder, but these assertions on appeal are new, so we will not consider them when the district court has not. *See Healix Infusion Therapy, Inc. v. Heartland Home Infusions, Inc.*, 733 F.3d 700, 703 (7th Cir. 2013); *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 783 n.11 (7th Cir. 2008).)

Cacciola next challenges the grant of summary judgment to Cady, the sheriff. But Cacciola points to nothing in the record that disputes Cady's sworn statement that he did not even know that Cacciola was in the jail and had no knowledge of his needs. This unrebutted evidence supports the grant of summary judgment. *See Gayton v. McCoy*, 593 F.3d 610, 621 (7th Cir. 2010) (affirming summary judgment when sheriff did not know of plaintiff's incarceration). Cacciola replies that under Illinois law, 730 ILCS 125/2, Cady was legally responsible for overseeing the jail. Whatever the law in Illinois, Cady cannot be held liable on state-law grounds in a § 1983 suit. *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003); *Windle v. City of Marion, Ind.*, 321 F.3d 658, 662–63 (7th Cir. 2003); *Estate of Novack v. Cnty. of Wood*, 226 F.3d 525, 531–32 (7th Cir. 2000). Because Cacciola has no evidence that Cady knew of an Eighth Amendment violation, his theory boils down to supervisor liability, which does not apply to § 1983 suits. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

Finally, we note that Cacciola makes no argument in his appellate briefs about Officer Hill's liability. In any case, nothing in the record shows that Hill—a layperson—should have known to do anything differently when professional doctors had determined that Cacciola needed no further treatment. *See Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011); *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). The grant of summary judgment in her favor was correct.

**AFFIRMED**.