Sarah ROBYNS, Plaintiff–Appellant,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY and Community Centers of Indianapolis, Inc., Defendants–Appellees.

No. 97–1058.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1997.

Decided Nov. 25, 1997.

Eric C. Redman, Debra M. Law (argued), Cohen & Malad, Diane M. Moore, Indianapolis, IN, for Plaintiff–Appellant.

Thomas J. Grau, Cynthia M. Locke, White & Raub, Indianapolis, IN, Michael J. Burns (argued), James A. Young, Christie, Pabarue, Mortensen and Young, Philadelphia, PA, for Reliance Standard Life Insurance Company.

John W. Purcell, Cynthia P. Purvis (argued), Baker & Daniels, Indianapolis, IN, for Community Centers of Indianapolis, Inc.

Before CUMMINGS, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

In a classic case of jumping the gun, Sarah Robyns sued her ERISA plan administrator, Reliance Standard Life Insurance Company ("Reliance") and plan provider, Community Centers of Indianapolis, Inc. ("CCI"), for denying her total disability claim before Reliance had decided to deny her claims permanently. She claims that the plan's demands for additional medical examinations were pretextual attempts to obtain a diagnosis consistent with an earlier decision to deny her claim. The district court granted the defendants' summary judgment motion as Robyns failed to exhaust her administrative remedies. We affirm.

## I. History

Robyns began working as a clinical supervisor for CCI in April 1991. This position is primarily a sedentary one requiring Robyns to sit for seven of her eight working hours each day. Robyns oversaw the provision of treatment services to adolescents involved in substance abuse and counseled their families. She enrolled in an employee welfare benefit plan offered by CCI, administered and funded by Reliance, and governed by ERISA, 29 U.S.C. § 1001 *et seq.* On September 26, 1991, CCI placed Robyns on short-term disability leave due to several ailments, including fatigue syndrome and fibromialgia. During this leave, she received benefits from CCI's employee welfare benefit plan.

In March 1992, Robyns applied for long-term disability benefits. Reliance approved this claim on July 20, 1992 retroactive to March 25, 1992. Its decision was based in part on a June 30, 1992 certification by Robyns' physician, Dr. Steven H. Neucks, who diagnosed Robyns as having fibromialgia with a "very low prognosis" for returning to work. Reliance also had a diagnosis on June 5, 1992 from Dr. Wayne Pribble, a clinical psychologist, which concluded that Robyns was suffering from major depression that would "exacerbate and complicate" her physical condition.

On August 6, 1992, as part of a standard followup procedure, Robyns informed Reliance that she hoped to return to work on a part time basis in November 1992. She also mentioned that she had been making and selling jewelry. This information prompted Reliance to request further medical records from Robyns. It received a diagnosis of fibromialgia from Dr. Linda Huck.

In early 1993, Reliance re-examined Robyns' disability status in accordance with its long term disability policy.[1] Reliance's Susan Dioguardi, R.N., performed the medical review of Robyns' case file. Claims examiner Janice Harrison examined other parts of the file to ensure Robyns was unable to work. Harrison requested that Robyns submit her 1992 tax return and that Robyns' treating psychologist (Dr. Pribble) evaluate her prognosis for returning to work as a clinical supervisor.

Dr. Pribble responded by stating he did not "feel competent to comment on the medical severity of the conditions." He suggested that Reliance contact Robyns' treating physician to confirm that she was totally disabled. Reliance then wrote Robyns on February 23, 1993 and March 24, 1993, requesting the name of her treating physician, Dr. Linda Huck.

Reliance wrote Dr. Huck on April 30, 1993, asking her help in "clarifying the claimant's current medical status." It did not receive a response. On June 15, 1993, Reliance wrote Robyns, notifying her that her benefits would be suspended if it did not receive Dr. Huck's reply within thirty days. On July 1, 1993, Dr. Huck responded. She stated that there were intervals of time when Robyns' pain "is such that she would be able to carry on duties as described for a social worker" but that frequent exacerbations prevented her from sustaining a steady job. Thus, Dr. Huck concluded Robyns was disabled.

After an internal audit of her claim left the insurer with unanswered questions, Reliance wrote Robyns on August 6, 1993 to request: 1) a copy of 1992 tax returns (for the second time); 2) a completed disability statement form from an attending physician; 3) the names and addresses of all physicians who treated her in 1993 and the conditions for which she was treated; and 4) a listing of all jewelry shows she attended that year. It did not receive a response. Reliance repeated this request on September 7, 1993. On October 9, 1993, Reliance again wrote Robyns with this same request. Finally, Reliance spoke with Robyns on October 12, 1993. At this time, she informed Reliance that she had retained an attorney and that the attorney had previously sent the information and had repeatedly called Reliance. Reliance has no record of these contacts.

Unable to contact Robyns' lawyer, Reliance wrote her on October 19, 1993 to ask for the same information initially requested in August 1993. It then received some of the

---

1. The policy Reliance relied upon is the group long term disability insurance policy number LSC 65,119 issued by Reliance to CCI. This poli-cy funded the long term disability component of CCI's employee welfare benefit plan.

requested information, including a list of jewelry shows Robyns attended in Illinois, Ohio, and Kentucky. These materials did not include a completed disability form from an attending physician. Reliance contacted Dr. Huck's office. Her staff explained that there would be a delay because they only received the request to complete the form on October 19 and the doctor was on vacation.

On October 25, 1993, Reliance wrote Robyns' attorney requesting additional information as Robyns had not yet satisfied Reliance's earlier requests. Reliance did not receive a response. It resent this letter on November 11, 1993. At this time, Dioguardi reviewed these latest events and the entire case file to date. She recommended that Reliance deny the claim. Robyns, however, received her monthly disability check on November 28.

On December 1, 1993, Reliance received Robyns' attorney's reply to its October 25 letter. This reply did not explain how Robyns could travel through the Midwest to sell her jewelry and yet not perform the sedentary duties associated with her former position as a social worker. To resolve this issue, Reliance elected to conduct an independent medical examination of Robyns. It scheduled this examination through a third party vendor, General Rehabilitation Services, Inc. During this same time period, opposition to Robyns' claims was building within Reliance. By early December, a collection of handwritten notes establish that at least two employees at Reliance wished to deny her claims. There is no evidence in the record to suggest that either of these employees has final decision-making authority. In December, Robyns did not receive a disability check from Reliance. Robyns believes that these handwritten notes confirm that Reliance had effectively denied her claim and that any subsequent action was simply pretextual.

In early January 1994, Reliance notified Robyns by mail of her scheduled medical examination. Robyns canceled the appointment because her attorney was unable to attend at the scheduled time and she wished her attorney to be present at the appointment. Reliance rescheduled the appointment and notified Robyns and her attorney in writing on January 24, 1994 that Reliance would interpret a failure to attend this appointment as an indication that Robyns was not interested in cooperating with Reliance.

The January 24 letter also informed Robyns that "[y]our benefits ceased because your medical condition was not consistent with the physical activities involved with the selling of your jewelry. It was felt you were not totally disabled from performing sedentary duties." The letter continued, stating that "[o]ur decision to have you examined is not an attempt to stall benefit payment, but to determine if you are capable of performing sedentary work.... Upon receipt of the results [of the individual medical examination] and our review, we will notify your attorney of our decision." The letter did not inform Robyns of Reliance's internal appeals procedure.

In response, Robyns filed suit against Reliance and CCI on January 28, 1994. On February 4, 1994, she did submit to Reliance's independent medical examination. The examining physician, Dr. Kern, then requested a functional capacity evaluation. This testing was performed on February 14, 1994. Dr. Kern reported the results of this testing to Reliance on February 21, 1994. He stressed that the testing evinced "a high degree of symptom magnification and inappropriate illness behavior. In addition, the patient did not display a bell-shaped curve on the handheld grip strength testing. This indicated a submaximal effort." Dr. Kern admitted that he had "several questions regarding the patient's permanent and total disability status." Yet, even though he had "difficulty understanding why she cannot return to her previous occupation," he recommended a vocational rehabilitation referral to a certified rehabilitation counselor to allow for a final determination.

Meanwhile, the pending litigation ensued. In Autumn 1996, the parties filed motions for summary judgment. On October 2, 1996, the district court granted summary judgment in favor of the defendants. In denying Robyns' claims under 29 U.S.C. § 1132, the court exercised its discretionary ability to require a plaintiff to exhaust her administrative remedies before filing a claim for wrongful denial

of benefits in federal court. Robyns appealed.

## II. ANALYSIS

Robyns raises three issues on appeal. First, she claims that Reliance failed to provide her with adequate notice of her plan's review process, thereby exempting her from exhausting her administrative remedies. Second, Robyns alleges that the court erred in imposing the exhaustion requirement because pursuing administrative remedies would be futile. Third, she believes the lower court abused its discretion in requiring her to exhaust administrative remedies by refusing to consider whether CCI's failure to alert her of the plan's administrative review breached any fiduciary duty.

### A.

We review a district court's grant of summary judgment *de novo,* drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & Western Ry. Co.,* 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, neither "the mere existence of some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

### B.

Under ERISA § 502(a)(1)(B), a beneficiary may bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To recover benefits under § 502(a)(1)(B), the employee must establish that she "has satisfied the conditions necessary for benefits under the plan." *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1133 (7th Cir.1992).

ERISA is silent on the issue of whether exhaustion of remedies is a prerequisite to suit. However, at least since *Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir. 1983), this Court has held that a district court may properly require the exhaustion of remedies before a plaintiff may file a claim alleging the violation of an ERISA statutory provision. *See Wilczynski v. Lumbermens Mut. Cas. Co.,* 93 F.3d 397, 401 (7th Cir. 1996). Several reasons support this conclusion. "Congress's apparent intent in mandating internal claims procedures found in ERISA was to minimize the number of frivolous lawsuits, promote a non-adversarial dispute resolution process, and decrease the cost and time of claims settlement." *Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 650 (7th Cir.1996); *see also* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1. Plaintiffs would frustrate this intent if they could circumvent ERISA's administrative remedies. Additionally, "Congress intended fund trustees to have primary responsibility for claim processing, as evidenced by the specific requirement in § 503, 29 U.S.C. § 1133, of a claim and appeal procedure for every employee benefit plan. To make every claim dispute into a federal case would undermine the claim procedure contemplated by the Act." *Challenger v. Local Union No. 1 of Intern. Bridge Structural, and Ornamental Ironworkers,* 619 F.2d 645, 649 (7th Cir.1980). Finally, implementation of the exhaustion requirement enhances the trustees' ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes. *See Kross,* 701 F.2d at 1245. "These advantages

outweigh a plaintiff's relatively minor inconvenience of having to pursue her claims administratively before rushing to federal court." *Lindemann,* 79 F.3d at 650.

■ The law in this Circuit is that the decision to require exhaustion before a plaintiff may proceed with a federal lawsuit is a matter within the discretion of the trial court. *See id.* We will disturb a district court's decision "only when there has been a clear abuse of discretion." *Powell v. A.T. & T. Communications, Inc.,* 938 F.2d 823, 825 (7th Cir.1991); *see also Wilczynski,* 93 F.3d at 401; *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 466 (7th Cir.1986). "Abuse of discretion means a serious error of judgment, such as reliance on a forbidden factor or failure to consider an essential factor." *Powell,* 938 F.2d at 825.

■ Robyns claims that the district court abused its discretion by requiring her to exhaust her administrative remedies. The parties agree that Robyns did not attempt to seek administrative review. A district court may excuse a plaintiff's failure to exhaust administrative remedies (1) if there has been a lack of meaningful access to the review procedures or (2) if exhaustion of internal remedies would be futile. *See Smith v. Blue Cross & Blue Shield United,* 959 F.2d 655, 658–59 (7th Cir.1992). Robyns asserts that the district court abused its discretion in applying the exhaustion requirement because the court failed to consider essential factors to this determination, including the fact that she has satisfied each of the exceptions to this requirement.

### 1.

ERISA establishes certain minimum procedural and notification requirements when a plan administrator denies a claim for benefits. In a nutshell, ERISA requires that the administrator communicate specific reasons for the denial to the claimant and that the administrator afford the claimant with an opportunity for a "full and fair review." 29 U.S.C. § 1133.[2] The regulations promulgated under the statute require that the initial notice contain:

1) The specific reason or reasons for the denial;

2) Specific reference to pertinent plan provisions on which the denial is based;

3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f). "These requirements insure that when a claimant appeals a denial to the plan administrator, he will be able to address the determinative issues and have a fair chance to present his case." *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 381 (7th Cir.1994) (quoting *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 689 (7th Cir.1992)).

■ Robyns claims that she is excused from exhausting the plan's administrative remedies because she was never informed of Reliance's internal administrative appeals process. According to Robyns, Reliance decided to deny her claims in early December 1993. She interprets Reliance's January 24, 1994 letter as the official denial of her benefits. This letter does not give specific references to the plan provisions on which the denial was based and does not explain the administrative appeals process. It only requires that Robyns undergo further medical examination. Thus, Robyns believes that Reliance denied her claim without satisfying ERISA's notification requirements. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1(f).

---

**2.** The statute states:

In accordance with regulations of the Secretary, every employee benefit plan shall-

, 1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

Robyns' allegations are misplaced. Reliance was not required to comply with the procedural requirements of § 503 of ERISA, 29 U.S.C. § 1133, in its January 24 letter. "Section 503 specifically states that the statutory requirements are to be satisfied by the plan in the event a participant or beneficiary's claim is *denied*." *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 180 (7th Cir.1994) (emphasis in original). "[P]lans are not required to comply with the conditions under § 503 and related regulations prior to denying a participant or a beneficiary's claim for benefits." *Id.*; *see also Smith*, 959 F.2d at 659 & n. 2 (refusing beneficiaries' claim that they lacked meaningful access when claim denial occurred after requests for administrative review). We agree with the district court that it would be quite odd to require a plan to "supply notice of the procedure for reviewing a denial of benefits ... before [the plan] had even made a final decision." *Robyns v. Community Ctrs. of Indianapolis, Inc.*, No. 94–0440–C, slip op. at 8 n. 1 (S.D.Ind. Oct. 2, 1996).

Reliance's January 24 letter is not a denial of benefits. It is an attempt to explain why Reliance suspended its payments and why Reliance is requesting an additional examination. The insurer's other actions confirm that the letter is not a denial of benefits. On Reliance's request, an independent organization performed a medical examination of Robyns on February 4, 1994. Reliance also approved a functional capacity evaluation of Robyns on February 14, 1994. Even after these additional tests, the independent examiner, Dr. Kern, recommended that a certified rehabilitation counselor examine Robyns to make a final determination. If Reliance had already decided to deny benefits, it would not require an outside examination and follow a doctor's recommendation of even more analysis. This evidence suggests that Reliance had not made a final determination about Robyns' claims before she filed suit and that this is a classic case of jumping the gun.

Robyns has attempted to assert a denial of her claim when there was none. Her argument rests on the assumption that the organization made the decision simply because a few employees stated in notes and memoranda that they recommend one outcome. We refuse to automatically impute the opinion of one or two employees to the entire company. Robyns has failed to produce evidence that either of the employees possessed decision-making authority. Without evidence establishing this fact, we cannot base a judgment for Robyns on such a nebulous assumption in light of Reliance's clear actions to the contrary.

Robyns wishes us to believe that the additional testing was an attempt to find a diagnosis consistent with Reliance's earlier decision to deny her benefits. Though this theory is plausible, Robyns has no evidence to support it beyond the employee notes. These internal communications do not amount to a smoking gun that exposes some nefarious conspiracy within Reliance to deny Robyns her disability benefits. Instead, these notes are evidence of Reliance's internal decision-making process. Robyns declared that she had been making jewelry and selling it at shows throughout the Midwest. Based on this admission, Reliance suspected that Robyns was not totally disabled. The additional tests were a means of confirming its suspicions. The insurer was attempting to obtain irrefutable medical evidence that Robyns could return to sedentary work so it could deny her disability claim. Without commenting on this business practice, we are simply recognizing that ERISA's procedural protection has not been triggered. While it may be true that Reliance wanted to deny Robyns' claim by January 1994, it had not yet done so. Reliance, therefore, did not violate ERISA § 503 by failing to provide meaningful access to its review procedures, and the district court did not abuse its discretion by requiring Robyns to exhaust her administrative remedies.

2.

■ Robyns also asserts that the district court erred by applying the exhaustion requirement because pursuing administrative review would have been futile. Robyns, however, did not argue this point to the district court. "[A] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Reklau v.*

*Merchants Nat'l Corp.*, 808 F.2d 628, 629 n. 4 (7th Cir.1986) (quoting *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir.1983)). The well-established rule in this Circuit is that a plaintiff waives the right to argue an issue on appeal if she fails to raise the issue before a lower court. *See, e.g., Milwaukee Area Joint Apprenticeship Training Committee v. Howell*, 67 F.3d 1333, 1337 (7th Cir.1995). We adhere to the waiver rule in this case.

 Even though the invocation of this doctrine can render harsh results, a closer examination of the merits of the underlying ERISA claim reveals that it does not work an injustice in this case. *See Dale*, 797 F.2d at 466. To satisfy the futility exception to the exhaustion requirement, a plaintiff must show that "it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision." *Lindemann*, 79 F.3d at 650 (quoting *Smith*, 959 F.2d at 659). Robyns' claim of futility is based solely on conjecture. She believes that her administrative appeals would be futile because Reliance was predisposed to deny her claim. The fact that Reliance administers both claim denials and administrative appeals is not enough to constitute futility. *See Dale*, 797 F.2d at 467. Also, Robyns has not presented any facts to show that Reliance's review procedure would not root out any predisposition. *See Smith*, 959 F.2d at 659. Thus, assuming, *arguendo*, that Robyns had raised this claim below, the record does not suggest that requiring an exhaustion of remedies is an exercise in futility.

### 3.

Finally, Robyns asserts that the district court abused its discretion in not excusing her from the exhaustion requirement because the court did not consider whether CCI breached its fiduciary duties to Robyns by failing to apprise her of the Plan's appeals process. Essentially, Robyns is arguing that the district court made a "serious error in judgment" by not considering whether CCI breached a fiduciary duty by not alerting Robyns of her administrative remedies. *See Powell*, 938 F.2d at 825. Even assuming that a failure to apprise a beneficiary of potential administrative appeals is sufficient to consti-

tute a breach of fiduciary duties, the district court did not err by not considering this factor in imposing the exhaustion requirement. As stated *supra*, ERISA's procedural and notification requirements are not triggered until the plan administrator denies the claim. *See Tolle*, 23 F.3d at 180; *see also* 29 U.S.C. § 1133(2); 29 C.F.R. 2560.503–1. As Reliance did not deny Robyns' claim until after she filed suit, the district court correctly disregarded whether Robyns' fiduciaries failed to notify her of the administrative review process.

For the foregoing reasons, we AFFIRM the decision of the district court.