# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-1893

ECONOMY FOLDING BOX CORP.,

*Plaintiff-Appellant,*

*v.*

ANCHOR FROZEN FOODS CORP.,

*Defendant-Appellee.*

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 04 C 4485—**Blanche M. Manning**, *Judge.*

ARGUED DECEMBER 6, 2007—DECIDED JANUARY 25, 2008

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
RIPPLE, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Here we have a suit for
breach of contract by Economy Folding Box Corp. (Economy) against Anchor Frozen Foods Corp. (Anchor). Economy and Anchor entered into a contract wherein Economy agreed to provide Anchor with boxes in which Anchor could ship frozen seafood. Economy delivered the first shipment of boxes and Anchor filled them with its product and shipped them off to its distributors. Anchor soon received word from its distributors that the boxes were falling apart. After Anchor refused to pay for the boxes or accept any further deliveries, Economy sued for

breach of contract. Following a two-day bench trial, the district court found that Anchor properly revoked its acceptance of the first shipment and that it had a right to cancel the contract. The court entered judgment in Anchor's favor. We affirm.

## I. Background

Prior to the transaction at issue, Anchor regularly ordered boxes from Economy.[1] Early in 2004, Anchor asked Economy to design a new packaging system that would consist of six inner boxes of frozen seafood contained in a single outer box. Anchor planned to sell these "six-packs" to distributors for resale to customers. The outer box was to be the shipping carton and needed to be sturdy enough to withstand being stacked on pallets and shipped on freezer trucks to distributors. Ken Green, Economy's sales representative, assured Anchor that the outer box Economy designed would be freezer-worthy and would withstand being palletized. When samples of the inner and outer boxes were ready, Economy sent them to Anchor. Anchor's president, Roy Tucillo, tested the boxes by filling them with frozen seafood and freezing them for a week. Anchor approved the samples and ordered 180,000 inner cartons and 30,000 outer cartons from Economy. That order could be increased or decreased up to 20% based on overrun or underrun of boxes by Economy. In the spring of 2004, Economy sent Anchor a shipment of 6,300 outer boxes and 36,800 inner boxes. Anchor accepted those boxes and Economy issued an invoice for 204,000 inner boxes and 34,000 outer boxes on or about April 14, 2004. Approximately two weeks later, Economy issued an invoice for the remainder of the boxes.

---

[1] As neither party disputes the trial court's findings of fact, we rely on them in recounting the events giving rise to this appeal.

After receiving the first delivery of boxes, Anchor sent shipments of frozen food in the new boxes to two of its distributors, Colorado Choice Distributors (Colorado Choice) and American Gold Label (American Gold). Approximately two and a half weeks later, Anchor began receiving complaints from Jay Raulerson at Colorado Choice that the outer boxes were splitting open and collapsing at some of Colorado Choice's cold storage facilities. Raulerson told Anchor not to send any more shipments in those boxes. Tucillo asked Raulerson to put his complaints in writing. On May 28, 2004, Economy asked Anchor to pay the two outstanding invoices for the boxes, and that same day, Anchor sent Economy a written rejection of the boxes. Tucillo subsequently received a written complaint from Raulerson describing the problem with the boxes and a facsimile from American Gold conveying a similar complaint. Anchor forwarded these complaints to Economy. Throughout June, the parties had conversations and exchanged letters about the allegedly defective boxes. However, they were unable to resolve the problem. On July 7, 2004, Economy filed suit against Anchor for breach of contract and account stated. In its answer, Anchor asserted that the boxes were not merchantable or fit for their intended purpose and violated these implied warranties.

The district court analyzed Economy's claims under the Illinois version of the Uniform Commercial Code (UCC) and found that, although Anchor accepted the boxes, it properly revoked its acceptance under 810 ILCS 5/2-608 after learning of the boxes' defects. The court also concluded that Anchor had proven its defense of breach of an implied warranty of fitness for a particular purpose under 810 ILCS 5/2-315 and entered judgment in Anchor's favor. Economy appeals the district court's decision, arguing that it erred in failing to analyze the contract under 810 ILCS 5/2-612, which applies to installment contracts.

## II. Discussion

We review a district court's conclusions of law de novo and its findings of fact and application of law to fact for clear error. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 634 (7th Cir. 2005). "A finding of fact is clearly erroneous only when the reviewing court is left with the definite and firm conviction that a mistake has been committed.*" Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 447 (7th Cir. 2006) (citation omitted).

Economy argues that the district court erred in analyzing the contract as a single delivery contract rather than as an installment contract under 810 ILCS 5/2-612. Unfortunately for Economy, it did not raise this argument before the district court and, as we have long held, "[i]t is axiomatic that an issue not first presented to the district court may not be raised before the appellate court as a ground for reversal." *Christmas v. Sanders*, 759 F.2d 1284, 1291 (7th Cir. 1985) (citation omitted). *See also Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir. 1997) ("The well-established rule in this Circuit is that a plaintiff waives the right to argue an issue on appeal if she fails to raise the issue before a lower court.") (citing *Milwaukee Area Joint Apprenticeship Training Comm. v. Howell*, 67 F.3d 1333, 1337 (7th Cir. 1995)). Economy did not discuss installment contracts or cite 810 ILCS 5/2-612 in its Trial Memorandum (R. 38), its Proposed Findings of Fact and Conclusions of Law (R. 46) or its Reply Memorandum (R. 51.) In fact, Economy framed its breach of contract case under the UCC sections that apply to single delivery contracts. Having asked the court to apply that law, Economy cannot now ask us to fault the district court for having done so. For "[t]o reverse the district court on grounds not presented to it would undermine the essential function of the district court." *Boyers v. Texaco Ref. & Mktg, Inc.*, 848 F.2d 809, 812 (7th Cir. 1988).

Economy attempts to circumvent our well-established waiver rule by arguing that it relied on the UCC in the district court proceedings, and thus it implicitly reserved its installment contract argument. This argument is a nonstarter. A plaintiff cannot rely on the entire UCC and leave it to the court to determine what code sections apply to her claim. It is not the court's responsibility to research the law and construct the parties' arguments for them. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002); *Jackson v. Casio PhoneMate, Inc.*, 105 F. Supp.2d 858, 874 (N.D. Ill. 2000) ("The court will not construct defendant's argument for it."). Economy also points out that in its Trial Brief and Supplemental Proposed Findings of Fact and Conclusions of Law, Anchor quoted 810 ILCS 5/2-601, which defines a buyer's right to reject non-conforming goods and states that it is "[s]ubject to the provisions of this Article on breach in installment contracts (Section 2-612)." Economy contends that because Anchor quoted a section of the UCC that references 810 ILCS 5/2-612, the installment contract issue was raised before the district court. This argument is unavailing as well. Economy's analysis of its claims was under the single delivery sections of the UCC. It is the parties' responsibility to allege facts and "indicate their relevance under the correct legal standard." *APS Sports Collectibles*, 299 F.3d at 631. Economy alleged facts and indicated their relevance under the single delivery contract provisions of the UCC and must accept the consequences of that decision.

Having determined that Economy did not raise its installment contract argument before the district court, we note that the rule against considering new arguments on appeal is subject to certain limited exceptions, such as "where jurisdictional questions are presented or where, in exceptional cases, justice demands more flexibility." *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329,

1333 (7th Cir. 1977) (citation omitted). This case does not implicate those limited exceptions, however, and we find that Economy has waived its installment contract argument.

Economy also argues that it had a right to cure any defects before Anchor could lawfully reject the first installment of boxes or cancel the contract. In the decision below, the district court did not make a finding whether the defect in the outer box was curable or whether Economy had an opportunity to cure. The court applied 810 ILCS 5/2-608, which provides that a buyer can revoke acceptance of a delivery of non-conforming goods if he "accepted it (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." A small number of courts have found that a seller who accepts goods without knowing they are non-conforming and later discovers the defect must give the seller a chance to cure before revoking acceptance. *See* 18 Richard A. Lord, Williston on Contracts, § 52:25 (4th ed. 2004). However, most courts "have concluded that the seller's right to cure does not apply to situations in which the buyer revokes acceptance based on a subsequently discovered defect." *Id.* (citation omitted). Noting that there is no dispositive Illinois case on the issue, the district court found that since 810 ILCS 5/2-608 does not expressly provide a seller a right to cure prior to a buyer's revocation of acceptance, Economy had no right to cure under that section. Economy does not challenge the district court's conclusion. Indeed, at oral argument, counsel for Economy conceded that the district court's analysis was correct and asserted that the court's only error was in not applying 810 ILCS 5/2-612, which does provide a seller with a

right to cure before a buyer can reject an installment. Because Economy did not argue before the district court that it had a right to cure under 810 ILCS 5/2-612, and because it does not challenge the district court's conclusion that there is no right to cure under 810 ILCS 5/2-608, Economy has waived its cure argument as well.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment in favor of Anchor.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*