In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1117

BRET A. BROADDUS,

*Plaintiff-Appellant,*

*v.*

KEVIN SHIELDS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-cv-4420—**Amy J. St. Eve**, *Judge.*

ARGUED OCTOBER 19, 2011—DECIDED DECEMBER 21, 2011

Before FLAUM and MANION, *Circuit Judges*, and MAGNUS-STINSON, *District Judge*.*

MAGNUS-STINSON, *District Judge*.  This is an appeal from three district court orders in a dispute between former business partners. Plaintiff-appellant Bret A. Broaddus

---

* The Honorable Jane E. Magnus-Stinson, District Judge for the United States District Court for the Southern District of Indiana, is sitting by designation.

sued Defendant-appellee Kevin Shields for breach of fiduciary duty, and Mr. Shields counterclaimed for indemnification. Ultimately, the district court granted summary judgment in favor of Mr. Shields on Mr. Broaddus' claim for breach of fiduciary duty, granted summary judgment in favor of Mr. Shields on his indemnification claim, and awarded Mr. Shields $798.619.16 in attorney's fees. After reviewing each of the district court orders at issue, we affirm.

## I.  Background

### A.  Mr. Broaddus' and Mr. Shields' Business Relationship

Will Partners, LLC ("Will Partners"), was organized in 1998 to acquire and improve real property in Monee, Illinois. Mr. Shields was the managing member of Will Partners. Between 1998 and 1999, Will Partners financed and facilitated the construction of a 700,200 square foot warehouse to serve as the central distribution facility for World Kitchen, Inc. ("WKI"). WKI paid rent to Will Partners each month.

On November 2, 2000, Mr. Broaddus entered into a written agreement for a 10% membership interest in Will Partners (the "November 2000 Agreement"). Mr. Broaddus' share garnered approximately 45% of Will Partners' net cash flow.

In November 2001, Mr. Broaddus was involved in a serious car accident. He suffered significant bodily injury

and a traumatic brain injury. A legal guardian was appointed for him on February 15, 2002. In September 2002, Mr. Broaddus requested that the guardianship be terminated and represented that he "ha[d] recovered sufficiently from his injuries to manage his own affairs." The guardianship was terminated.

In late 2002, Mr. Shields contacted Mr. Broaddus, and they discussed the fact that WKI was in bankruptcy. Mr. Shields informed Mr. Broaddus that Will Partners would need to make a capital call in order to pay WKI's real estate tax installment. Mr. Broaddus alleges that Mr. Shields also told him that WKI was delinquent on its rent of approximately $45,000 per month. Mr. Shields denies making that representation.

Sometime after this discussion, Mr. Broaddus and Mr. Shields discussed the sale of Mr. Broaddus' interest in Will Partners. The parties have different recollections of the relevant conversations. Mr. Shields attests that in October or November 2002, Mr. Broaddus asked him to purchase Mr. Broaddus' interest in Will Partners so that Mr. Broaddus could move to Florida. According to Mr. Shields, Mr. Broaddus demanded $800,000 for his interest, and Mr. Shields countered at $400,000. Mr. Broaddus contends, however, that Mr. Shields approached him in March 2003 and offered to buy his interest in Will Partners so that Mr. Broaddus would not have to put more money into the company.

The parties agree that in March 2003, Mr. Shields purchased Mr. Broaddus' interest in Will Partners for $600,000. Between March 26 and March 30, 2003,

Mr. Broaddus executed at least two assignments in connection with the transaction (the "March 2003 Assignments"). In both assignments, Mr. Broaddus represented and warranted that he "has had an opportunity to ask questions and receive answers regarding the terms and conditions of the sale . . . and has had full access to such other information concerning [Will Partners] as he has requested, including an opportunity to examine the books and records of [Will Partners] and to discuss the condition of [Will Partners]."

Mr. Broaddus alleges that he only sold his interest in Will Partners because Mr. Shields allegedly told him that WKI—Will Partners' only tenant—was not paying rent. Documents produced during discovery show that WKI was, in fact, paying rent during the relevant time. Mr. Shields emphasizes that Will Partners sent Mr. Broaddus a copy of the February 2003 and March 2003 income statements to Mr. Broaddus' office, indicating that WKI had paid its rent. Mr. Broaddus asserts that he did not receive those statements because he was recovering from the car accident and was not traveling to his office during the relevant time. Mr. Broaddus admits, however, that he received the distribution deposits reflected on the financial statements and that Will Partners could not have made a distribution unless WKI was paying its rent. Nevertheless, Mr. Broaddus claims that he could not have reasonably discovered that WKI was paying its rent until the summer of 2003.

### B. Mr. Broaddus' Breach of Fiduciary Duty Claim Against Mr. Shields

On May 30, 2008—five years and two months after selling his interest in Will Partners—Mr. Broaddus, an Illinois citizen, filed a Complaint in state court against Mr. Shields, a California citizen, for breach of fiduciary duty. Mr. Shields removed Mr. Broaddus' action to federal court on the basis of diversity jurisdiction. The parties agree that Illinois law governs Mr. Broaddus' claim and that a five-year statute of limitations applies.

Early in the case, on December 29, 2008, Mr. Shields filed a motion for summary judgment, arguing that the five-year statute of limitations barred Mr. Broaddus' claim. In response, Mr. Broaddus attested that Mr. Shields had told him that WKI was not paying its rent to Will Partners and that he was not able to verify that WKI was actually paying its rent until the summer of 2003 when Ed Hayes confirmed that information. The district court denied Mr. Shields' request for summary judgment, in part, because of Mr. Broaddus' representations about the Hayes conversation. The court also concluded that although it was possible for Mr. Broaddus to discover his injury in March 2003, the parties had offered no evidence regarding any knowledge Mr. Broaddus should have possessed at that time. The district court also lifted a previously imposed stay of discovery.

On February 8, 2010, Mr. Shields filed a renewed motion for summary judgment, again raising the statute of limitations. Mr. Shields challenged the admissibility of the earlier evidence submitted by Mr. Broaddus to

support application of the discovery rule. On reply, Mr. Shields also noted critical discrepancies between Mr. Broaddus' declaration and his deposition.

In response to Mr. Shields' renewed summary judgment motion, Mr. Broaddus admitted that Mr. Hayes had no personal knowledge regarding whether WKI was paying its monthly rent during the relevant time period. Nevertheless, Mr. Broaddus submitted an amended affidavit containing many of the same representations from his prior affidavit, including his representation that he was not able to verify that WKI was paying its rent until the summer of 2003 when Mr. Hayes confirmed that information.

The district court ultimately granted Mr. Shields' renewed motion for summary judgment. After analyzing the Illinois discovery rule, the district court concluded that Mr. Broaddus could not rely on his self-serving affidavit to create an issue of material fact when his deposition testimony directly contradicted his representations regarding any conversation with Mr. Hayes. Because Mr. Broaddus made no attempt to explain the discrepancy, and the district court found that his attestations regarding the alleged conversation with Mr. Hayes were not based on personal knowledge, the district court concluded that Mr. Broaddus had not met his burden to invoke application of the discovery rule. Consequently, the district court held that Mr. Broaddus' breach of fiduciary duty claim was barred by the statute of limitations. Mr. Broaddus appeals that decision.

### C.  Mr. Shields' Indemnification Counterclaim

In response to Mr. Broaddus' Complaint, Mr. Shields filed a counterclaim for indemnification, seeking to enforce a contractual indemnity provision and two contractual fee-shifting provisions.

After the district court granted summary judgment in favor of Mr. Shields on Mr. Broaddus' breach of fiduciary duty claim, Mr. Shields moved for summary judgment on his indemnification claim. The district court addressed each of the contracts at issue and determined that each afforded Mr. Shields a basis for indemnity by Mr. Broaddus.

Mr. Broaddus appeals the district court's order granting summary judgment in favor of Mr. Shields on each of the contracts related to the indemnification counterclaim.

### D.  Attorney's Fees Award

On September 15, 2010, Mr. Shields filed a fee petition requesting $966,696.21 in attorney's fees. As of the date of that filing, Mr. Shields had paid $932,629.19 of that amount. Mr. Broaddus challenged the reasonableness of the fee request and argued that Mr. Shields' business, Griffin Capital, actually paid the fees. Mr. Broaddus further argued that Mr. Shields' counsel overstaffed the case and had incurred unnecessary expenses reviewing unrelated litigation in which Mr. Broaddus was involved.

The district court rejected most of Mr. Broaddus' contentions concerning the reasonableness of the fees and determined there was no evidence that Mr. Shields had not paid the fees as represented. The district court agreed with Mr. Broaddus, however, that Mr. Shields' defense had been overstaffed and that time spent reviewing and monitoring Mr. Broaddus' other litigation was unrelated and not compensable. The district court reduced Mr. Shields' request by $168,077.05 and awarded him $798,619.16 in attorney's fees. Mr. Broaddus appeals the district court's fee award.

## II. DISCUSSION

As indicated previously, Mr. Broaddus appeals three of the district court's orders: (1) the order granting summary judgment in favor of Mr. Shields on Mr. Broaddus' breach of fiduciary duty claim; (2) the order granting summary judgment on Mr. Shields' indemnification counterclaim; and (3) the order awarding Mr. Shields $798,619.16 in attorney's fees.

We are exercising diversity jurisdiction over this action. When addressing a question of state law while sitting in diversity, "our task is to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Thomas v. H&R Block Eastern Enters.*, 630 F.3d 659, 663 (7th Cir. 2011).

### A.  Mr. Broaddus' Claim for Breach of Fiduciary Duty

The parties agree that Mr. Broaddus' claim against Mr. Shields accrued in March 2003 and that Mr. Broaddus did not file suit against Mr. Shields until May 2008—five years and two months later. Although Mr. Broaddus does not dispute that Illinois' five-year statute of limitations applies to his claim, 735 Ill. Comp. Stat. 5/13-205, he contends that the statute was tolled for at least two months due to an alleged legal disability stemming from a severe car accident or, alternatively, due to the discovery rule.

We review the district court's grant of summary judgment *de novo*, construing all facts and inferences in the light most favorable to the non-movant, Mr. Broaddus, in determining whether a genuine issue of material fact exists that would preclude summary judgment. *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machs. Corp.*, 547 F.3d 882, 886 (7th Cir. 2008).

### i.  Mr. Broaddus' Alleged Legal Disability

Mr. Broaddus argues that a genuine issue of material fact exists regarding whether he was legally disabled at the time his cause of action against Mr. Shields accrued. In support of his argument, Mr. Broaddus directs us to Illinois' legal disability statute, which provides that a person entitled to bring an action who is under a legal disability at the time that action accrues can bring the action within two years after the disability is removed. 735 Ill. Comp. Stat. 5/13-211.

Mr. Broaddus conceded in his reply brief and at oral argument that he did not raise the issue of his legal disability to the district court in response to Mr. Shields' motion for summary judgment.

"[I]t is axiomatic that an issue not first presented to the district court may not be raised before the appellate court as a ground for reversal." *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008). Reversing a district court on grounds not presented to it "would undermine the essential function of the district court." *Id.* Therefore, arguments raised for the first time on appeal are waived. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010).

Mr. Broaddus attempts to circumvent our well established waiver rule by arguing that issues regarding his legal disability were generally raised in other aspects of the litigation and that a "miscarriage of justice would result absent this court's review" because the true gravity and extent of his disability were not evident until after summary judgment. Significantly, Mr. Broaddus raises this claim purely by way of argument and provides no evidentiary support to support this contention.

We reject Mr. Broaddus' request for us to address his alleged legal disability for the first time on appeal. It was Mr. Broaddus' choice not to raise that issue in response to Mr. Shields' summary judgment motion invoking the

statute of limitations.[1] Courts rely on the parties to know what is best for them and to advance the facts and arguments that entitle them to relief. *See Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present . . . . Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.").

To phrase our ruling simply, we invoke a common idiom: Mr. Broaddus cannot change horses in midstream. He chose his defense strategy in response to Mr. Shields' summary judgment motion and is bound by that choice on appeal. *See Econ. Folding Box Corp.*, 515 F.3d at 721 (finding an argument raised for the first time on appeal to be waived because the party must "accept the consequences of [its] decision" to present its claims under one legal theory instead of another). Allowing Mr. Broaddus

---

[1] Mr. Broaddus successfully represented to another court six months before the business transaction at issue that he "ha[d] recovered sufficiently from his injuries to manage his own affairs" and no longer needed a legal guardian. Asserting the legal disability argument in response to Mr. Shields' summary judgment motion may have implicated the judicial estoppel doctrine. *See United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003) (emphasizing that the doctrine of judicial estoppel is intended to protect the integrity of the judicial process by preventing a party who prevails on one ground in a lawsuit from repudiating that ground in another lawsuit).

to raise his legal disability as a defense to the statute of limitations summary judgment motion for the first time on appeal would undermine the essential function of the district court to adjudicate the issues the parties present. Therefore, we find Mr. Broaddus' arguments regarding his alleged legal disability to be waived.

### ii.  The Discovery Rule

Mr. Broaddus did raise the Illinois discovery rule to the district court in response to Mr. Shields' renewed summary judgment motion invoking the statute of limitations. The district court held that Mr. Broaddus had not met his burden to invoke the discovery rule and granted summary judgment in favor of Mr. Shields.

Although Mr. Broaddus raised the discovery rule to the district court, he did not present that argument in his appellant's brief. Consequently, Mr. Shields argues that Mr. Broaddus has waived the discovery rule argument on appeal. In his reply brief, Mr. Broaddus concedes that he omitted the argument from his appellant's brief but urges this Court to address the merits of the discovery rule because the omission was "a simple mistake."[2]

---

[2] After Mr. Shields pointed out that Mr. Broaddus failed to raise the discovery rule in his appellant's brief, Mr. Broaddus filed a motion to file an amended appellant's brief to include the omitted section. Mr. Broaddus' motion was denied with the remark that "[a]ny argument regarding the proposed amendment can be made in the appellant's reply brief."

(continued...)

Mr. Broaddus also argues that Mr. Shields waived his waiver argument by not supporting it with relevant legal authority.

Once again, we invoke our well established waiver jurisprudence: arguments raised for the first time in a reply brief are waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011). We reject Mr. Broaddus' argument that Mr. Shields waived the waiver argument because, in fact, Mr. Shields cited legal authority to support his position and appropriately raised the argument at his first opportunity. Additionally, we are capable of observing that Mr. Broaddus raised this issue for the first time in his reply brief. For these reasons, we conclude that Mr. Broaddus has waived his argument regarding the discovery rule on appeal.

Waiver notwithstanding, even if we were to forgive Mr. Broaddus' "mistake" and address the merits of his belated discovery rule argument, we would still affirm the district court's decision. We review statute of limitations determinations *de novo*. *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 626 (7th Cir. 2010). Illinois follows the general rule that tort claims arising from a contract accrue when the contract is breached. *In re marchFIRST Inc.*,

---

[2] (...continued)

Mr. Broaddus contends that the order authorizes him to substantively raise the discovery rule issue in his reply brief. We find that reading to be overbroad. Mr. Broaddus was authorized to respond to Mr. Shields' waiver argument on reply, but how to resolve the issue was left to the panel.

589 F.3d 901, 903 (7th Cir. 2009). But Illinois also recognizes the discovery rule, which "tolls the running of the limitations period with respect to claims that would have put a reasonable person on notice of the need to investigate whether actionable conduct is involved." *Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 22 (Ill. 2005). "[I]n Illinois, the party seeking to utilize the discovery rule bears the burden of proving the date of discovery." *In re marchFIRST Inc.*, 589 F.3d at 904. Although application of the discovery rule may be an issue of fact, the question becomes one of law that can be resolved on summary judgment where it is apparent from the undisputed facts that only one conclusion can be drawn. *Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 719 (7th Cir. 1994); *see also Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 766-67 (N.D. Ill. 2010) (collecting cases).

Mr. Broaddus' discovery rule argument on appeal consists of two parts. First, he argues that the district court erred by concluding that he failed to meet his burden. He believes that Mr. Shields failed to meet his initial burden with respect to the statute of limitations, so no burden ever shifted to Mr. Broaddus.

We find otherwise. Mr. Shields' summary judgment motion raised the statute of limitations based on the undisputed evidence that the business transaction at issue occurred in March 2003 and that Mr. Broaddus did not file suit until May 2008—two months after the five-year statute of limitations ran. In response, Mr. Broaddus sought to invoke the discovery rule to toll the statute of limitations. It was thereafter Mr. Broaddus' burden to

prove the date of discovery or to present evidence to create an issue of material fact regarding the same. If he did not, the issue is a matter of law that can be resolved against the party seeking to utilize the discovery rule at summary judgment. *See, e.g.*, *Cathedral of Joy Baptist Church*, 22 F.3d at 719. Mr. Broaddus' argument that he did not bear a burden on summary judgment ignores the applicable law and, accordingly, must be rejected.

Second, Mr. Broaddus argues that the statute of limitations did not begin to run until at least June 2003 because he could not have reasonably discovered his injury before that time. The only evidence he relies upon is his affidavit attesting that he was not able to verify that WKI was paying its rent until the summer of 2003 "when Ed Hayes and others confirmed this information."

That evidence, however, is both unreliable and inadmissible. Mr. Hayes testified that he did not speak with Mr. Broaddus about WKI, that he did not have personal knowledge of the lease between WKI and Will Partners, and that he had no knowledge whether or not WKI was paying its rent during the relevant time. And Mr. Broaddus testified at his deposition that he did not actually recall any conversations he had with Ed Hayes about WKI during the summer of 2003.[3] Mr. Broaddus also

---

[3] On appeal, Mr. Broaddus scolds Mr. Shields for presenting Mr. Broaddus' deposition testimony for the first time in his reply supporting summary judgment. Mr. Broaddus completely ignores, however, that his deposition was taken after

(continued...)

admitted that Mr. Hayes had no personal knowledge whether WKI was paying its monthly rent during the relevant time period.

We have repeatedly held that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). Affidavits signed under oath "when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy." *Beckel v. Wal-Mart Assocs.*, 301 F.3d 621, 623 (7th Cir. 2002).

We also agree with the district court that Mr. Broaddus' deposition testimony establishes that he did not actually recall any conversations he had with Ed Hayes about WKI during the summer of 2003. Mr. Broaddus therefore lacks personal knowledge to support the sole statement that forms the basis for him to invoke the discovery rule. Mr. Broaddus did not attempt to explain this discrepancy to the district court, and he

---

[3] (...continued)
Mr. Shields filed his summary judgment motion and pursuant to a district court order. Therefore, the first time Mr. Shields could have presented Mr. Broaddus' deposition testimony was on reply. Mr. Broaddus neither moved to strike that testimony nor filed a surreply. For these reasons, we reject Mr. Broaddus' argument that the district court should not have considered his deposition testimony on summary judgment.

maintains this silence on appeal. Because Mr. Broaddus does not cite any other evidence on which to invoke the discovery rule, we conclude that even if he had not waived the argument on appeal, he failed to meet his burden as a matter of law on summary judgment. Therefore, we affirm the district court's judgment with respect to Mr. Shields' motion for summary judgment on the statute of limitations.

## B. Mr. Shields' Indemnification Counterclaim

In response to Mr. Broaddus' Complaint, Mr. Shields asserted counterclaims seeking to enforce a contractual indemnity provision and two contractual fee-shifting provisions. The district court granted summary judgment in favor of Mr. Shields on his counterclaims, which Mr. Broaddus appeals.

The parties agree that Delaware law applies to each of the contracts at issue. Delaware "has adopted traditional principles of contract interpretation." *ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 68-69 (Del. 2011). For example, when a contract is clear and unambiguous, terms and provisions are given their clear meaning. *Id.*

### i. March 2003 Assignments

Mr. Broaddus argues that the district court erred by granting summary judgment in favor of Mr. Shields on the indemnification claim stemming from the March 2003 Assignments.

The March 2003 Assignments, through which Mr. Shields purchased Mr. Broaddus' interest in Will Partners for $600,000, contain identical indemnification provisions:

> [Broaddus] agrees to indemnify, defend and hold harmless [Shields] and its agents, shareholders, members, managers, directors, affiliates, employees, insurers, successors, heirs, representatives, attorneys and assigns, from and against any and all losses arising out of or due to a breach of any of the representations, warranties or covenants of [Broaddus] contained herein.

Mr. Broaddus does not argue that any terms or provisions in the March 2003 Assignments are ambiguous. And Mr. Broaddus does not dispute that he breached the assignments by filing suit against Mr. Shields or that the clause at issue allows Mr. Shields to recover attorney's fees. Mr. Broaddus' sole argument is that the district court erred because indemnification clauses only apply to actions by third parties, not to claims directly between the indemnitor and indemnitee.

Delaware law is "more contractarian than that of many other states" and "parties' contractual choices are respected." *GRT, Inc. v. Marathon GTF Technology, Ltd.*, 2011 WL 2682898, at *12 (Del. Ch. July 11, 2011); s*ee also Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) ("We must . . . not rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal. Parties have a right to enter into good and bad contracts, the law enforces both."). The

term "indemnify" generally means "[t]o reimburse (another) for a loss suffered because of a third party's *or one's own* act or default." BLACK'S LAW DICTIONARY 784 (8th ed. 2004) (emphasis added). Delaware trial courts have enforced indemnification provisions between an indemnitor and an indemnitee. *See, e.g.*, *Barker Capital LLC v. Rebus LLC*, 2006 WL 246572 (Del. Super. Ct. Jan. 12, 2006) (enforcing indemnification provision between indemnitor and indemnitee). Moreover, in the context of addressing the timeliness of an indemnification claim where one party agreed to indemnify the other for damages arising from that party's breach of contract, the Delaware Supreme Court held that the term "indemnity" has a "distinct legal meaning that permits the party seeking indemnification to bring a separate cause of action for indemnification after first bringing a successful action for breach of the contract." *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 197-98 (Del. 2009).

Applying these principles, we agree with the district court that the indemnification provision at issue is enforceable. The provision is broad and does not limit recovery to actions by third parties against an indemnitor or indemnitee. In fact, it expressly contemplates Mr. Broaddus indemnifying Mr. Shields in the case of a breach. Mr. Broaddus does not deny that he breached the contract or that the provision at issue is unambiguous. Therefore, like the district court, we will honor the parties' freedom to contract and affirm the decision to grant summary judgment in favor of Mr. Shields on his indemnification counterclaim related to the March 2003 Assignments.

### ii.  Will Partners' LLC Agreement

Will Partners' LLC Agreement contains a prevailing party fee-shifting provision that provides as follows:

> In any action or proceeding between or among the Members arising out of this Agreement, the unsuccessful member shall pay the prevailing Member all costs and expenses, including, without limitation, reasonable attorneys fees incurred by the prevailing Member in such action or proceeding whether or not such action or proceeding is prosecuted to judgment.

Mr. Broaddus does not argue that any terms or provisions in the LLC Agreement are ambiguous, and he does not dispute that his action arises out of the LLC Agreement or that Mr. Shields was the prevailing party. Instead, his sole argument on appeal is that the district court erred by enforcing the fee provision of the LLC Agreement because Mr. Broaddus never signed that agreement. Mr. Broaddus did not present this argument to the district court and, consequently, has waived it on appeal. *LaBella Winnetka, Inc.*, 628 F.3d at 943.

Waiver notwithstanding, Mr. Broaddus admits that the LLC Agreement controlled the relationships of its members, including Mr. Broaddus and Mr. Shields. By not contesting that his claim arises out of the LLC Agreement, that the agreement controlled the relationship at issue, and that Mr. Shields was the prevailing party, Mr. Broaddus has given us no grounds on which to decline to enforce the fee-shifting provision. The fact that he did not sign the LLC Agreement is of no consequence because by acquiring a membership interest in Will

Partners, Mr. Broaddus became bound by the LLC Agreement, including the fee-shifting provision. Therefore, we affirm the district court's decision to grant summary judgment in favor of Mr. Shields on his indemnification counterclaim related to the LLC Agreement.

### iii.  November 2000 Agreement

Mr. Broaddus acquired his interest in Will Partners in the November 2000 Agreement. That agreement contains a prevailing party fee-shifting provision that provides as follows:

> Should it be necessary for any party to this Agreement to initiate legal proceedings to adjudicate any issues arising hereunder or under any document executed pursuant hereto, the prevailing party in such legal proceedings shall be entitled to reimbursement of such party's attorney's fees, costs, expenses and disbursements (including the fees and expenses of expert witnesses) reasonably incurred or made in bringing such proceedings.

Mr. Broaddus does not argue that any terms or provisions of the November 2000 Agreement are ambiguous. And again, Mr. Broaddus does not contest that Mr. Shields is the prevailing party. He argues, instead, that his action did not arise out of the November 2000 Agreement. This argument is unconvincing because Mr. Broaddus obtained his membership interest in Will Partners pursuant to the November 2000 Agreement. The fee-shifting provision in that contract applies to "any

issues arising [under the November 2000 Agreement] or under any document executed pursuant hereto." The March 2003 Assignments transferring Mr. Broaddus' membership interest to Mr. Shields were undisputedly executed pursuant to the November 2000 Agreement; therefore, Mr. Broaddus' action against Mr. Shields arises out of both contracts.

Moreover, Mr. Broaddus actually attached the November 2000 Agreement to his Complaint against Mr. Shields. This further confirms that Mr. Broaddus' action arises out of that agreement.

For these reasons, we affirm the district court's decision to grant summary judgment in favor of Mr. Shields on his counterclaim related to the November 2000 Agreement.

### C. Attorney's Fee Award

Mr. Broaddus also challenges the district court's decision to award Mr. Shields $798,619.16 in attorney's fees.[4] Mr. Broaddus does not dispute the legal standards

---

[4] To be clear, the attorney's fees award was Mr. Shields' sole recovery on the indemnification counterclaims. Mr. Broaddus does not argue separate damages or elements of recovery under any of the contractual provisions or contest that Mr. Shields was entitled to recover attorney's fees under any of the three contracts. Therefore, upholding the district court's disposition of even one of the indemnification counterclaims

(continued...)

applied by the district court, request a line-by-line review of Mr. Shields' bills, or specifically challenge any portion of the $168,077.05 reduction the district court made from Mr. Shields' initial fee request. Instead, Mr. Broaddus argues that (1) he suspects that Mr. Shields' business, Griffin Capital, paid Mr. Shields' legal bills; (2) Mr. Shields' alleged "egocentric need to win" resulted in a commercially unreasonable amount of fees; and (3) the district court erred by failing to hold a post-ruling evidentiary hearing on the fee request on reconsideration.

Our review of an award of attorney's fees is highly deferential. *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). As we have previously noted, "[i]f ever there were a case for reviewing the determinations of a trial court under a highly deferential version of the 'abuse of discretion' standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court." *Id.*

### i.  Whether Mr. Shields Paid Fees

Although Mr. Broaddus argues that he provided "ample evidence" for his speculative assertion that Mr. Shields' business "might be paying his fees," he fails to cite or describe any of that evidence on appeal. As the district court noted, Mr. Shields' attorney confirmed under oath

---

[4]  (...continued)

entitles Mr. Shields to recover attorney's fees under the corresponding contract.

that Griffin Capital was not paying Mr. Shields' legal fees, and Mr. Shields testified that he was personally paying his legal fees. Mr. Broaddus' failure to acknowledge this evidence or cite any evidence supporting his argument leads us to summarily reject his unsupported assertion that Griffin Capital may have paid Mr. Shields' attorney's fees. *See* Fed. R. App. P. 28(a) (requiring an appellant's brief to contain an "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

### ii. Commercial Reasonableness

Mr. Broaddus next argues that the amount of fees the district court awarded Mr. Shields was commercially unreasonable. Mr. Broaddus bases his challenge on his belief that Mr. Shields' defense strategy was motivated by a vindictive desire to drive up his own legal expenses by overstaffing the case and ordering his attorneys to monitor Mr. Broaddus' other legal disputes "to destroy" Mr. Broaddus.

Mr. Broaddus' characterization of Mr. Shields' motivation, whether deserved or not, ignores that the district court reduced Mr. Shields' fee request by $168,077.05 for the same reasons that Mr. Broaddus presents on appeal. Specifically, the district court reduced Mr. Shields' fee request by $23,072.61 for attorney overstaffing and by an additional $145,004.44 for time counsel spent tracking Mr. Broaddus' other legal matters that were not directly related to the underlying litigation. Mr. Broaddus does not argue that the district court im-

properly calculated the reductions or that it should have made additional cuts. Therefore, we reject his narrow challenge to the commercial reasonableness of the fee award.

There is no doubt that Mr. Shields incurred a significant amount of fees during the underlying litigation. The district court, however, was in the best position to assess the difficulty of this case and the reasonableness of the requested fees. It determined that this "was not an easy, straight-forward matter" and that Mr. Broaddus' "tactics caused many of the delays and the resultant costs in this matter." We are not in a position to second-guess that assessment, especially when Mr. Broaddus' litigation strategy required Mr. Shields to engage in discovery and file an additional summary judgment motion after Mr. Broaddus submitted an affidavit for which he later admitted he had no personal knowledge. Moreover, as the district court noted, one of the best indicators of commercial reasonableness is a willingness to pay the fees without guaranteed reimbursement. *See Matthews v. Wis. Energy Corp.*, 642 F.3d 565, 573 (7th Cir. 2011). Mr. Shields paid approximately $850,000 of his attorney's fees before he knew that the contractual fee-shifting provision would apply.

In light of our highly deferential standard of review, the appropriate reductions the district court made to Mr. Shields' fee request, and the payment of fees without guaranteed reimbursement, we reject Mr. Broaddus' argument that the fees the district court awarded were commercially unreasonable.

### iii.  Belated Request for Hearing

Mr. Broaddus argues for the first time in his reply brief that the district court erred by failing to hold a post-ruling evidentiary hearing on Mr. Shields' request for attorney's fees. As we have already emphasized, it is well established that arguments raised for the first time in a reply brief are waived. *Mendez*, 646 F.3d at 423-24.

Waiver notwithstanding, Mr. Broaddus asked the district court to hold an evidentiary hearing on Mr. Shields' fee petition for the first time in a motion to reconsider.[5] It is well established that a motion to reconsider is only appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

The entirety of Mr. Broaddus' argument on appeal is that the district court "decided Shields' request for fees in a summary fashion" and "did not hold an evidentiary hearing." We disagree with Mr. Broaddus that the district court's analysis and reductions were done in a summary fashion. More importantly, Mr. Broaddus fails

---

[5] Although Mr. Broaddus structured his motion as a motion to amend judgment, final judgment had not been entered at that time and his motion should have been framed as a motion to reconsider the order awarding attorney's fees.

to explain why his belated hearing request is one of the limited circumstances where a motion to reconsider is appropriate. Therefore, we conclude that the district court did not err by not holding an evidentiary hearing after Mr. Broaddus' belated request.

For these reasons, we affirm the district court's award of attorney's fees.

## III. CONCLUSION

We AFFIRM the district court's judgment on each of the three orders Mr. Broaddus challenges on appeal.